In re AFFORDABLE PATIOS & SUNROOMS, Appellant Trustee Christopher Burke appearing pro se, Seth Adams appearing for appellate. All right, again into the breach Mr. Burke, how much time do you want to reserve? Five minutes please. All right, you may commence. Thank you. May it please the court, Christopher Burke for affordable patios, the appellant. There's two issues and then a clarification I'll have to make. We're asking that this get remanded because there was no real evidence to allow the estimated claims by Reno Sparks Indian tribe. And second, even if the court held it was sufficient evidence, the tax penalty was not a priority. It was not compensatory and it should have just been given general unsecured status. Now let's stop. Let's start with your first point, which is I assume where you want to start. You said there's no real evidence. I think that was your word, but there is evidence, right? Yeah, I'm getting stuck on my own words. In terms of real evidence, there was insufficient evidence, perhaps that's the better word, but I do want to clarify something because I had counsel who argued the objection to claim and then going through this last night, there's a correction I think that needs to be made that unfortunately doesn't look like it was brought up at all. And that is the 2018 and 2019 taxes were really just penalties. That's not true. I mean, the unpaid portion of the assessments for those years before we get to the default really at issue were related to the failure to timely file of returns. But if you look at the evidence in the record, it shows significant taxes during that period. It shows because the returns were ultimately filed and it shows $18,000 for June, $15,000 for July, $16,000 for August, $14,000 for September in 2018. And then you can use algebra, something I still like to do, for the penalty related to the 2019 late filing penalty. You get, I think, a tax somewhere in the range, the other side of $13,000. So I will say, I don't know where your prior counsel got his numbers from, but I find them widely off the mark. Right. And that's the correction I wanted to make because when I went through it, what I was saying is the 2018, 2019, which totaled 10 or 12,000 were just for penalties for late filing. Okay. So you're conceding. Yeah. Okay. Right. If it was the tax, that was the problem to say, okay, it jumped to in one year, $120,000, but that's not, so I want to correct that myself. So the issue is, was the estimated, we don't know what the estimated claim was based on. I know we can look, well, prior years probably, but two problems with that, it wasn't laid out or explained. And number two, the bankruptcy was filed in January, 2020, and it really stopped selling cars at that point. And over the next six or seven months, there were some vehicles worth probably on average $500 that I was able to sell that didn't add much in terms of how much tax should have been taxed. The other vehicles either didn't have titles or weren't running or other problems like that. So the estimated tax from January to July is incorrect. And there was no basis for it except for prior years. But again, the bankruptcy had been filed in January, 2020. Why didn't you put in evidence to that effect? Sorry. Yeah. I was going to ask the same kind of question. Why didn't you just file a return? The principal of the business alleged that all of his computers were stolen. And so the returns couldn't be prepared. There was no evidence to prepare it for the pre-petition part, but you knew the post-petition part. Did you file a return for the post-petition part? No. And here's the thing. There were two lots. One was the Indian Reservation. One was not the Indian Reservation. And the auctioneer took the vehicles and sold them from the non-Indian Reservation lot or from his own lot. So technically, they weren't sold on the Indian Reservation land. But it really gets down to, I'm going to ask sort of a, maybe a flip question, but so you've got a taxpayer who says, my computers were stolen. I don't know how much I sold. Sorry. Does that mean the taxing entity doesn't get paid anything? Because that's kind of what you're suggesting. I agree. That's not the best argument. And so I understand what Reno Sparks did. They put together, based on prior years, it just wasn't explained. It says it's estimated, but... Did you ask for discovery? I don't see anything in the record where you asked for an evidentiary hearing, you asked for discovery, you asked, you know, at any rate, you know, asked for anything that would allow them an opportunity to do that, or require them to do that. No. Okay. Let me ask another question. In the briefs, you mentioned an argument about the failure of the tribe to give the notice. And you didn't mention that before. Is that an argument you're not advancing today? Well, if it wasn't argued before, I would argue it's simply a legal issue and the court can consider it. No, but what I meant is, in your introduction today, you didn't mention that point, I think. I didn't. Okay. Is that an argument you're not advancing anymore? I would argue, I would advance this point. If the court considers it just a legal argument, I would ask the court to consider it. I don't think it was argued below sufficiently. And so, that's why I didn't push it at this point. Which is probably wise, because if it had been raised below, they would have had the opportunity to respond with evidence on that point, correct? Correct. And it could have been appealed, correct. Okay. All right. And so, the second part of the thing, go ahead. I was going to say, let's go to your penalty argument. Okay. The second part is that the tax penalty was not compensatory, and therefore, it should have just been considered a general unsecured claim, and so we would ask that it be remanded so that the claim is bifurcated in that respect. And they argue in their brief that the argument wasn't, that this argument wasn't raised below either. And I don't see it in your opening brief below, but I do see something in your reply. Can you tell me where that argument was raised before the bankruptcy judge? I'll have to do that on rebuttal. See if I can find that. All right. Well, I think it's in your reply, sort of, kind of, but just to give the other side a hint of where my thinking is going on that. And you would, you know, we have nothing. The biggest problem in some ways is we have nothing from the bankruptcy court, nothing in terms of findings, so we don't know the bankruptcy court's analysis on this point at all, do we? No, and that's why we asked for a remand. We cited Ninth Circuit cases that if there's no findings of fact or conclusions of law, it needs to go back down so it can be figured out. So I'm still pushing for a remand, but I just wanted to clarify that one argument that I was going to argue is illogical or implausible, but now I'm stuck with there's no insufficient support in the record, and I understand how they extrapolated it. It just, it is problematical, the whole thing from beginning to end. But with that, I'll reserve my time. Well, and I think you could tell this is my time, not his, that I was primed to make you do some math. So if we had gone there, so you took the appropriate approach and stole my thunder from me. So thank you. If the word gets out that people have to do math in the back, everybody will go to the district court. So we need to be careful about that. Math, math. All right, Mr. Adams, you may commence. Thank you, Your Honor. May I please accord Seth Adams for Reno Sparks Indian Colony? I will certainly not try to rehash the entirety of our brief. I will hopefully jump right out of the gate and address where I think we left things off, which is the penalty component, roughly $19,883 by my math. And to the extent that on the spreadsheets that were affixed to Reno Sparks Indian Colony's tax claim, you can easily see it listed as the failure to file, I believe is the category on each line. It is a flat 20%. It is obviously based upon those estimated monthly tax receipts on a monthly basis. And we will concede that there was nothing affixed to the proof of claim that would have itemized the specific expenses for the colony that that penalty was intended to reimburse. You know, part of the issues I think that are associated with the trustee's frustration for understanding the calculations and so forth is, you know, there is no functional equivalent to 3001's requirement for a breakdown or an itemization like there is for individual debtor cases when we have a business entity. Something that frankly might've been helpful right here. But, you know, that is a point and our brief obviously, you know, address that point fairly sparingly because there's simply nothing in the record that addresses the pure 20% penalty for the failure to file as being included under the priority treatment. And we'll only note as well that the proof of claim form, form 410, simply has a box to be checked that simply says taxes and penalties do. And you know, again, hindsight, you know, when my client's counsel at the time was completing that, I don't doubt that there is no distinguishing feature that says entitled to priority under 507, et cetera, et cetera. So to that, you know, addressing that right out of the gate, we will concede that there's nothing in the record that addresses any specific reimbursement or compensatory component, but that leaves the remainder and frankly, the lion's share of the claim that I do think was. Let me stop you there and just make sure that because we like a concession and I want to make sure that I understand, are you then agreeing that reversal is appropriate on that point? Are you asking for remand to make your case? Your Honor, I don't think I can go that far. I mean, I do point out in our, our response that the, you know, Indian colony relies upon that ongoing taxation revenue. And as much as we'd like to liken ourselves, at least in a taxing capacity to the IRS, this is not the IRS. This is a relatively small Indian colony. And so obviously the failure to file by the debtor for the period in question was a significant hit. And so again, the argument, which was raised in our response is that, you know, in addition to the estimated taxes and interest, which are clearly entitled to priority in our opinion, that the penalty that was assessed there on should also be entitled to that. So I don't think I can go as far to purely concede that remand is appropriate to have it bifurcated, but I will certainly concede that there was nothing affixed to the proof of claim. And that broke that down, certainly. And you know, the trustees certainly did speak with me and I believe we've had a more of a meeting of minds regarding the colonies methodology for establishing the claims. It was kind of a rolling look back. So for the months that were filed and so on and so forth. And I believe that issue was kind of left here and alone. To address the other argument that the court raised just now regarding the penalty component not being raised in the original objection, the original objection, which is obviously part of the excerpts is, was, you know, the only time that it raised 502 was with respect to the lease cap. I think that argument is being completely abandoned as it applies to this claim. There was another claim that was certainly an issue that was completely addressed. When it switched to the colony tax claim not being entitled to priority, the broader argument was that the Indian colony itself was not a governmental entity under 101 sub 27. I think, again, that argument has been kind of left to wither. And then also that estimated claims in general wouldn't be treated as priority. And only when it reached the level of the appellate briefing did we have this bifurcation regarding the penalty component not being entitled. And so that was where our argument came from and our response that specifically addressing that 19,800 wasn't brought up at the lower court. It was brought up only that the entirety of the claim wasn't entitled to. But is that a distinction without a difference? I mean, if we're talking about waiver, they do make the argument again on reply that you're right. They're saying everything's a penalty, but they're saying it's not a penalty for pecuniary loss, which is the argument, you know, so they make the argument more broadly than perhaps was appropriate. But they do raise the argument that the taxing penalty has to be for pecuniary loss and not simply a flat blanket 20 percent or 50 percent or whatever. And they do raise it before the bankruptcy judge. So that argument was available to him when he considered the matter. We don't know what he did, but it was there.  I don't disagree, Your Honor. I do agree that that was part of their original argument. Certainly. Your Honor, the other things that again, you know, we would perhaps all benefit if the transcript reflected more of the court's analysis, perhaps. Any of the court's analysis? I'm sorry? Any of the court's analysis? Certainly, certainly. But, you know, our kind of greater argument was that there simply wasn't enough in the objection originally to have triggered it. And I will completely and, you know, frankly, lots of objections to claim do end up resulting in an evidentiary hearing, you know, when those points reach that initial threshold. And our thrust of our argument there regarding this burden shifting was really that it just never got there with the original objection. You know, again, the lease cap analysis was a non-starter. The colony not qualifying as a governmental entity entitled to priority was a non-starter. And then you kind of had this amorphous, rather large argument regarding the priority. Now, since, you know, briefing obviously has gone on, that has been fleshed out and there are components to that that we've already discussed, you know, perhaps have merit. But at the time that it was before the court, you know, there was simply nothing other than the proof of claim and its attachments itself before the court. And frankly, much of the transcript was spent kind of addressing those former two arguments rather than the third that kind of made its way up here. You know, I believe the court is satisfied and I believe I understood the trustee to have abandoned the noticing argument. The only other component to that besides the fact, obviously, that it almost certainly was not raised at the trial court level was that, you know, twofold. One, looking at the ordinance itself, I believe the trustee's contention reads too much that, for instance, for each individual month, you know, a notice needed to have been sent out as opposed to the very short sentence in a three sentence component of that ordinance dealing with default and estimation. It simply indicates that a notice or the colony will send a notice. And I think there's no disagreement that at least a notice was sent out. The other related component, Your Honor, is there is a tremendous amount of additional paperwork that didn't make it into the record. And I think, you know, the presumption in the trustee's brief that if it wasn't attached to the proof of claim that it never existed, I think simply take that, took that noticing provision entirely too far. The kind of last component that I think we'll want to focus in on, although, again, I don't want to overly read too much into the trustee's remarks on initial argument this morning, but, you know, there was certainly some authority raised in our responsive brief that tax claims often are estimated due primarily to the lack of anything to base them off. And I believe as of this morning, if the concession by the trustee is that the methodology used by Reno Sparks really isn't at issue, then hopefully we don't need to belabor that point this morning. But I will recite, and it certainly sounds like the court is already well aware of this, that there was a concrete methodology used. It was based upon the years or the months, rather, where actual filings were made. And it was just kind of on an ongoing rolling reset, I believe, six months kind of look and then move it forward. Well, I think more accurately to the way I see this is that the argument below was that first mathematically incorrect. And second, that there, you know, they were arguing, the council was arguing that the taxes had been hugely inflated off these penalty numbers. The trustee has conceded that that argument didn't make sense. I agree with the trustee. There's not a great deal of information. The declaration certainly doesn't, your declaration in support of your objection to the claim objection certainly doesn't walk through the methodology. But I am able to look at the evidence that is in there. I'm able to see taxes that were accrued for prior periods, roughly contemporaneous, and I'm able to conclude, again, based on math, in this case, division, that the tax that was assessed is something less than the monthly taxes that on a monthly basis than what I have evidence of in the record. So based on that, I can see some rationality to the judge's determination that there was enough there. And isn't that really the question? I'm not here to judge anything other than did the judge have enough? I would completely agree, Your Honor.  Now before Mr. Burke to disagree. Certainly. Unless the court has any further questions, I would just assume to see the remainder of my time. I have one thing I just wanted to say, Mr. Adams, I referred to your client as a tribe. That was a mistake. It's an Indian colony. And I understand that for some people, those labels matter an awful lot.  Thank you very much, Your Honor. All right. Anything further, Judge Zlaffy? All right. Thank you for your good argument, Mr. Burke. Thank you. And I do want to add, I called Mr. Adams this morning when I saw the math problems and just let him know that I was approaching it different because I saw where we had made an error. Having said that, just to address a couple of the points. It's issue preclusion, not argument preclusion. So the fact that initially we said the whole thing was a penalty, but now we walked back and said it's only portion is a penalty. That's something the court can still decide. And it's in the transcript where my counsel said it is page 226 at the bottom. It basically says that a penalty base or percentage based penalties are not pecuniary loss to qualify as priority in section 507. So it was listed. To address the question about asking for an evidentiary hearing, although not direct, let me read from the transcript page 227, where Mr. Lenders says lines 15 to 19. I've spoken to Mr. Burke. He has had lightning auctions to sell some cars. Mr. Burke would like to prepare a report showing exactly what cars were sold and how much he got for them. And we would agree to have a tax calculated that as a general unsecured allowed claim. So the issue was indirectly brought up by counsel. And next to address Judge Farris on the noticing in the opening brief on page 14 of 24. It does recite the statute Reno spark sales and use tax code section 1120. 11-20-260 and it says the tax and revenue department shall notify the taxpayer in writing of the estimated tax due along with the automatic penalty and fee and of the right to appeal. So it is in the opening brief again on page 14 of 24 that they should have been noticed at some point. And there's no evidence in the record that anybody was noticed. Just the proof of claim. I mean, that's a fact. But did you argue that they didn't receive notice? I believe that was just in the reply. Right, right. Well, and let me ask you this about the notice. Would that notice have told you anything that wasn't in the proof of claim other than your right to appeal under the local law? Well, it would have given us numbers. And we could have said, where did you get these numbers? You could say that in response to the proof. You did say that in response to the proof of claim. I would say that's exactly what you said. Or you're saying on appeal anyways. But then it would have been possible to appeal it to the Reno sparse Indian colony. Well, would you rather do that than appeal to us? I mean, I'm not sure that's a better forum for you. But I think that was one of their arguments below, though, was that you had that right. Kind of, why didn't you do it? Maybe I'm misremembering. Because we didn't get the notice. Well, you don't know. Right. Well, no notice was attached. Exactly. You can't categorically say they didn't give it, because the guy said he blew up his computer. Is that right? Right. He said they were all stolen. I mean, that's kind of where we are here is this circular. I completely understand. And so in the end, we're asking for a remand. And or reversal that the penalties are deserving of priority. Okay. All right. Any other questions from the panel? Thank you. I've got a comment. I appreciate the fact that just today and last night, you continued to work to narrow the differences. And I think I'm not as good at math as Judge Taylor is. I think you're probably not that far apart. I think in a way, my comment would be, it would have been even better if these discussions had happened earlier. They didn't. We are where we are. Speaking only for myself, I would encourage you to keep having those discussions. That's all I have to say. Thank you. And when I spoke to Mr. Adams this morning, he said the same thing. He said, why didn't we discuss this earlier? And I'll have to take the blame for not really looking at the proof of claim and what was a tax and what was a penalty. And only going through it yesterday, did it really hit me that the real basis here. But I appreciate those comments. And I'll continue to talk with Mr. Adams. If it's remanded or reversed, and we'll try to resolve it. Thank you. I don't need to wait for that either. Anyway, that's totally up to you. Thank you for your good arguments. All right. We will. This is the last matter. So we will be, we will end the day at this point. Thank you. Thank you. Thank you.
judges: TAYLOR, FARIS, LAFFERTY